H. R. ANDERSON, Plaintiff-Appellant,

v.

SWIFT & COMPANY, Defendant-Appellee.

No. 17108.

United States Court of Appeals Sixth Circuit.

June 16, 1967.

Robert C. Cetrulo, Covington, Ky., (O'Hara & Ruberg, Covington, Ky., on the brief), for appellant.

James C. Ware, Covington, Ky., (Ware, Bryson, Nolan & West, Covington, Ky., on the brief), for appellee.

Before CELEBREZZE and PECK, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Appellant Anderson, a meat curer, ordered from appellee, Swift & Company, 1,453 fresh, green-skinned hams weighing an average of 14 pounds each. Swift knew that these hams were to be used for "country curing," by appellant, as distinguished from "city cured" hams, or hams cured by other processes. The hams were delivered by Swift but did not respond to appellant's curing process. They were either spoiled at the time of delivery, as claimed by appellant, or became spoiled after delivery, as claimed by Swift & Company.

Appellant sued for damages for the delivery to him of the spoiled hams. The jury returned a verdict of no cause of action in favor of Swift & Company and from the judgment entered on the verdict, Mr. Anderson appeals.

The grounds of appeal are claimed errors in the trial court's admission of testimony and exhibits; in its instructions on the question of the burden of proof; and in the denial of appellant's motion for a directed verdict, and for a judgment notwithstanding verdict.

The main point in issue is one of fact: Whether Swift & Company delivered fresh, green-skinned hams to appellant. The evidence taken most favorably to the appealing party is that fresh, green-skinned hams are hams from hogs that have been killed, skinned, cut, frozen and delivered to the purchaser within three days of the killing. If so delivered, appellant's curing process for "country-cured" hams, through the use of certain chemicals, would be effective; if delivered later than the period above mentioned, the curing process would not be effective, since the chemicals used in curing would not, after such period, penetrate around the bone in time to prevent a bacterial action taking place around the inner portion of the ham, and that thereby the ham would become inedible, diseased and worthless. Of course, if the hams were delivered by Swift within three days of killing, and the purchaser then was guilty of delay in proceeding to cure them, they would, likewise, be spoiled.

The record is fairly copious, consisting of approximately 200 printed pages, including considerable expert testimony and evidence.

However, Judge Mac Swinford, in trying the case, in his usual lucid and penetrating appraisal and analysis of the heterogeneous and amorphous mass of testimony and evidence, reduced the issue to be determined by the jury to the simple question: Whether or not Swift & Company had delivered the hams to appellant within three days from the time the hogs had been killed. The jury, by its verdict, found that the hams had been delivered to appellant within the three-day period, and, accordingly, found in favor of Swift & Company.

We proceed, then, to appellant's claims of error, the principal contention being that the admission of prejudicial hearsay testimony required reversal of the judgment.

One of the principal witnesses for appellee was Mr. Harold Scheibly, who was in charge of sales for Swift & Company in the division that handled grocery stores, chain stores, and all purchasers other than hotels, restaurants, and institutions. He testified with respect to the custom and practice of the Company in the preparation and delivery of the products without relating it specifically to the hams in this case. He told of the method by which appellant Anderson would order hams, the quantity desired, and that it was necessary to check with the "provision man" at the Evansville Plant to ascertain whether the hams were available. He stated that he had

been employed by Swift & Company for 25 years; that the hogs are killed one day and placed in the chill rooms; that they are cut the next day, and shipped out of the plant in refrigerated trucks the same day. The hams arrive the next day at their destination, when they are delivered to the customer. All of these procedures, as testified to by Mr. Scheibly, were corroborated by testimony of other employees of Swift, including Eugene Zahm, Cutting Foreman, and Joseph H. Rogers, Curing and Green-Grading Foreman. Thereafter, Robert B. Richardson, the representative of Swift, testified and introduced all of the Company records relating to appellant Anderson's purchases, which showed the pertinent data with respect to each shipment, including the shipping dates to appellant and the dates of delivery to him.

As to the objection of Mr. Scheibly's testifying from the records of the Company relative to the transactions with appellant, it appears that records, consisting of invoices from the Cincinnati office of Swift, were marked for identification, at the request of counsel for appellant, and were introduced in evidence. The delivery receipts showing the date of delivery of the hams to appellant were also introduced in evidence. Later, when counsel for appellant moved to strike the testimony of the witness as being based on the Company records, counsel for Swift immediately stated to the court that he had at no time offered into evidence the records from which Mr. Scheibly was testifying.

Now, when Mr. Scheibly testified, he was referring to documents, which consisted of "corresponding driver's records, corresponding with ticket numbers and weights and delivery dates." After extensive testimony of the witness on direct examination, when he referred to such documents, no objection was made to his testimony by appellant counsel on the ground that he was testifying from Company records. There were objections that the testimony was irrelevant, and had no bearing on the case. But that does not go to the point that the witness was improperly testifying from Company records. As far as any testimony from the records goes, about all the witness testified to was that they showed the delivery dates of the hams to appellant. These facts were not contested. There was no reversible error in refusing to strike the testimony on the ground that the witness was telling only what the records disclosed, after he had testified to such facts without objection. Under any view, this testimony was entirely harmless.

The testimony of Mr. Scheibly, generally, was in the nature of expert evidence of a witness of long experience in the Company, as to the custom and practice of the Company in the preparation and delivery of its products; and his testimony was not inadmissible on the ground that it was hearsay.

Appellant, in his direct testimony, testified that he had cured hams which he had received from other packers and other individuals, particularly from one Mr. Fornash, and that, at all times, these hams were cured by appellant with no spoilage. However, appellant objects to the testimony of Howard Bregel and Eugene Finke with respect to their dealings with Swift over the same period of time involving this case, as well as during prior years. Mr. Bregel, a purchaser of hams from Swift, testified, from the records in his office, that in January 1964, he had received several shipments of hams from Swift; that all had been cured properly, and that he had no spoilage. Mr. Scheibly testified, from the records in his office, that Mr. Bregel had received shipments of hams at the same time that similar shipments were sent to appellant; and that one of the shipments of hams made to Mr. Bregel was part of a shipment including hams which were delivered to appellant on the same day, and on the same truck, and which appellant claimed were spoiled.

Mr. Bregel testified that none of the hams delivered to him at that time were spoiled, and all responded to the process of "country-curing."

■ The foregoing was properly admitted as evidence regardless of the fact that there was no proof that each of the hams delivered to Mr. Bregel and to appellant were from hogs killed on the same day. While the evidence was circumstantial, it was competent, since, from everything that appears, it was the best evidence which the nature of the case permitted. Appellant, himself, had resorted to like circumstantial evidence of purchases of hams from others and the fact that such hams responded to his curing process, in order to substantiate his case.

■ Objections to the testimony of one of appellee's witnesses who testified from a bacteriologist's report that bacteria were found in the interior of the hams shipped to appellant after he had subjected them to his curing process, and which showed that those hams were undercured, did not give rise to reversible error. If the delivery of the hams had been too long delayed by Swift to appellant, the latter's process of curing would not be effective because the chemicals used in the curing could not then permeate the meat to the interior or to the bone in time to prevent the bacterial action; and Swift, in effect, agreed that if it had been at fault in delivering the hams within three days of killing, the hams would have been spoiled because of bacterial action. If the hams were spoiled at the time they were delivered by too late a shipment by Swift, as appellant contends, it would make no difference that the reason why they could not be properly cured by appellant's process was because of bacterial action at the center of the hams, resulting from an undue delay occurring between the time of the killing of the hogs and the delivery of the hams to appellant. If the hams were delivered to appellant within the proper time, and his delay in the commencing of the curing of them resulted in spoilage, Swift would not be liable. The testimony as to the bacterial action arising out of such spoilage is only an interesting story, or explanation of how hams become spoil-

ed by too long a delay in curing. As the trial court instructed on this question:

"The defendant, on the other hand, produces witnesses who say that they receive hundreds of hams, thousands of hams, some of them about the same time or in the same shipment, and that there was no spoilage in any of those hams and that these witnesses testify that the hams that they received, as I say about the same time, cured out satisfactorily and there was no complaint and there was no souring around the bone or spoiling of the hams in any way.

"Now, other witnesses testified. Some of them gave you some technical knowledge of bacteriology and of chemical processing, all of which you should consider in reaching your verdict, but the issue comes down to one proposition and that is, when Mr. Anderson received these hams, had the mistake, we will say, been made at that time or was it made after he got them? Now, if you believe that those hams were in the process of deterioration and the damage had been done, in the handling of those hams, before they were delivered to the plaintiff, then he is entitled to recover. If you believe that there was no such circumstance, but that the damage to the hams, if any, took place after he received them, then he should not recover and the defendant is entitled to a verdict from this jury."

Appellant further contends that it was error for the trial court to instruct the jury that appellant "must sustain the burden of proof, it must be for him to produce evidence to justify you in holding that he is entitled to recover." In support of his contention, appellant submits that it is a fundamental rule in Kentucky law that the jury should not be instructed with regard to who has the burden of proof in a given case, citing Utilities Appliance Co. v. Toon's Administrator, 241 Ky. 823, 45 S.W.2d 478 (1932).

The foregoing case involved an automobile accident, as did the case of No-

wak v. Joseph, 275 Ky. 470, 121 S.W. 2d 939, and Gorman v. Berry, 289 Ky. 88, 158 S.W.2d 155.

The *Utilities Appliance* case involved the question of prima facie negligence and the shifting of the burden of proof after plaintiff's evidence had been introduced; and the court said:

"Since it is the law that upon proof that an automobile was driven at a rate of speed in excess of the statutory stipulation, the burden shifts, and it becomes incumbent upon the defendant to show that such speed was not unreasonable or improper driving, under the circumstances, that is, was not negligence, the jury must be instructed accordingly. But that must be done without offending the fundamental rule that the jury should not be told specifically upon whom the burden rests, or that a presumption of law is against one of the parties, although the instructions must be framed so as to indicate the burden."

In Gorman v. Berry supra, the court observed that in the *Utilities Appliance* case the opinion

"set out the form of an instruction that should be given when instructing the jury on statutory rate of speed and duties of the driver of a motor vehicle, but later, in the case of Nowak v. Joseph, 275 Ky. 470, 121 S.W.2d 939, 941, the form of instruction prescribed in the Toon case, supra, *was modified and an approved instruction pertaining to questions like and similar to the one here involved relating to the duties of drivers of motor vehicles,* was prescribed as indicated in that opinion. That prescribed form of instruction requires that the duties of the driver should be defined by separate paragraphs or items of instruction * * *." (Emphasis supplied.)

It is to be remarked that "proximate cause," "presumption," "shifting of the burden," and "preponderence of the evidence" are phrases that various courts have found confusing and troublesome

for juries and, accordingly, have tried to eliminate them in their instructions, by reducing the statements of the principles involved to detailed statements of the facts, and their effect, in the particular case. In the instant case, there was no use of the words "presumption," "proximate cause," "shifting of the burden of proof," "preponderance of the evidence," or any other phrase or rule of law that, in our view, could conceivably confuse or trouble a jury.

The above cited Kentucky cases, as mentioned, were all automobile accident cases. The instructions given in those cases which the appellate court found faulty, involved more than a statement that a plaintiff must sustain the burden of proof—that he had the duty of producing evidence to justify the jury in finding in his favor.

The district court here submitted the question whether Swift & Company supplied hams to appellant three days after the hogs had been killed. If it had failed to do so, appellant was entitled to recover. The controlling issue in the case was that simple.

 The point submitted by appellant relating to the district court's instruction as to the burden of proof, in the light of the Kentucky cases, above cited, comes close to bearing out appellant's contention, but it is not clearly determinative. We do not consider that the instruction that the appellant had the burden of proof in the instant case, which was totally different on the facts from the cited cases, was reversible error.

 With regard to claimed error in permitting the introduction of climatological data of the United States Department of Commerce, this was an official record of the United States Government and there was no error in the admission of such evidence.

Other claimed errors are deemed not meritorious.

In accordance with the foregoing, the judgment of the district court is affirmed.